**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

```
_____
                                   :
ANDRE P. JOSEPH,                   :
                                   :      Civil Action
             Petitioner,           :      No. 06-0520 (WJM)
                                   :
        v.                         :      O P I N I O N
                                   :
MICHAEL CHERTOFF, et al.,          :
                                   :
             Respondents.          :
_____:
```

**APPEARANCES:**

    ANDRE P. JOSEPH, Petitioner pro se
    ID. # 174194
    Hudson County Correctional Center
    Kearny, New Jersey 07032

    CHRISTOPHER J. CHRISTIE, United States Attorney
    SUSAN HANDLER-MENAHEM, Assistant U.S. Attorney
    970 Broad Street, Suite 700
    Newark, New Jersey  07102
    Attorneys for Respondents

**WILLIAM J. MARTINI, District Judge**

On February 3, 2006, Petitioner ANDRE P. JOSEPH (hereinafter "Petitioner"), a native and citizen of Haiti currently detained at the Hudson County Correctional Center in New Jersey, filed the instant Petition for a Writ of Habeas Corpus (hereinafter "Petition") under 28 U.S.C. § 2241, challenging his detention by

the Department of Homeland Security (hereinafter "DHS").[1] Petitioner, an aggravated felon under a final order of removal, see Pet. at 4, asserts that he is being held in custody in violation of 8 U.S.C. § 1231(a)(6), as clarified in Zadvydas v. Davis, 533 U.S. 678 (2001), and the Due Process Clause of the Fifth Amendment, see id. at 7-8, because (1) Petitioner's removal to Haiti is not significantly likely to occur in the reasonably foreseeable future, (2) he has cooperated fully with ICE's efforts to remove him from the United States. Id. at 5-6, 8.

Respondents filed an answer (hereinafter "Answer") asserting that, since "[Petitioner] was [detained in] the custody of the Bergen County Sheriff [from the time when Petitioner's order of removal became final until December 28, 2005] because of a pending narcotics charge . . . Petitioner's [instant Petition should be denied as] premature [in view of the fact that] Petitioner had not been in custody beyond the presumptively reasonable period of time." Ans. at 1.

Having thoroughly examined the papers and considered the arguments of the parties, this Court dismisses the Petition.

---

[1] The Homeland Security Act of 2002, 6 U.S.C. §§ 101-557, P.L. 107-296, 116 Stat. 2135 (Nov. 25, 2002), created the Bureau of Citizenship and Immigration Services ("BCIS") within the Department of Homeland Security. See 6 U.S.C. § 271(a). The Act transferred the functions of the Commissioner of the Immigration and Naturalization Service ("INS") to the Director of BCIS, see 6 U.S.C. § 271(b), and abolished INS. See 6 U.S.C. § 291. Accordingly, DHS replaced INS on March 1, 2003.

**JURISDICTION**

Under 28 U.S.C. § 2241(c), habeas jurisdiction "shall not extend to a prisoner unless . . . he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). A federal court has subject matter jurisdiction under § 2241(c)(3) if two requirements are satisfied: (1) the petitioner is "in custody" and (2) the custody could be "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3); Maleng v. Cook, 490 U.S. 488, 490 (1989). This Court has subject matter jurisdiction over the instant Petition under § 2241 because Petitioner was detained within its jurisdiction at the time he filed his Petition and he asserts that his detention is not statutorily authorized and violates his constitutional rights. See Zadvydas, 533 U.S. at 699.

**STANDARD OF REVIEW**

Petitioner seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2241(c)(3). That section states that the writ will not be extended to a prisoner unless "he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3).

A pro se pleading is held to less stringent standards than more formal pleadings drafted by lawyers. See Estelle v. Gamble, 429 U.S. 97, 106 (1976); Haines v. Kerner, 404 U.S. 519, 520

(1972).  A pro se habeas petition and any supporting submissions must be construed liberally and with a measure of tolerance.  See Royce v. Hahn, 151 F.3d 116, 118 (3d Cir. 1998); Lewis v. Attorney General, 878 F.2d 714, 721-22 (3d Cir. 1989); United States v. Brierley, 414 F.2d 552, 555 (3d Cir. 1969), cert. denied, 399 U.S. 912 (1970).

## DISCUSSION

According to the Petition, Petitioner was ordered removed from the United States by an Immigration Judge on March 18, 2004, see Pet. at 4, Ans. at  and "Petitioner's appeal was denied by the Board of Immigration Appeals [(hereinafter "BIA")] on May 2, 2005, thereby making the removal order final as of the date of the Board's decision." Id. at 4.  Petitioner contends that his current detention is not statutorily authorized and deprives him of a liberty interest in violation of the United States Constitution. See Pet. at 5-8 (relying on Zadvydas, 533 U.S. at 700-701).

### I.   Legal Framework

Section 1231(a)(1)(A) provides that the government has a 90-day "removal period" to remove an alien ordered removed from the United States.  Detention during the removal period under Section 1231(a)(1)(A) is mandatory and, in addition, § 1231(a)(1)(C) provides that the removal period shall be extended, and the alien may remain in detention during such extended period, if the alien

"acts to prevent the alien's removal subject to an order of removal."  8 U.S.C. § 1231(a)(1)(C).

The "removal period" starts on the latest of the following: (1) the date when the order of removal becomes administratively final (that is, appeal to BIA was either taken and ruled upon or the time to appeal expired); or (2) if the removal order is judicially reviewed and if a court orders a stay of the removal, the date of the court's final order, or (3) if the alien is detained or confined (except under an immigration process), the date the alien is released from confinement.  See 8 U.S.C. § 1231(a)(1)(B).

While, during the "removal period," the alien must be detained, see id. § 1231(a)(2), after the removal period, the government may detain the alien or release him subject to conditions of release.  See id. § 1231(a)(6).  In Zadvydas, the Supreme Court held that aliens may be detained under § 1231(a)(6) only for "a period reasonably necessary to bring about that alien's removal from the United States."  533 U.S. at 689 (holding that "the statute, read in light of the Constitution's demands, limits an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States [and] does not permit *indefinite* detention."  Emphasis supplied).

Recognizing that its holding would lead to difficult judgment

calls in the courts, the Supreme Court, "for the sake of uniform administration in the federal courts" recognized a six-month "presumptively reasonable period of detention." Id. at 700-01. Furthermore, the Supreme Court clarified that,

> [a]fter this 6-month period, once the alien provides *good reason to believe* that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing. And for detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the "reasonably foreseeable future" conversely would have to shrink. This 6-month presumption, of course, does not mean that every alien not removed must be released after six months. To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future.

533 U.S. at 701 (emphasis supplied).

## II.  **Analysis**

Since Petitioner (1) was released from confinement ensuing from the underlying offense prior to the entry of the BIA order, see Pet. at 2, and (2) did not seek judicial review of his removal order, see id. at 4, Petitioner's "initial" 90-day removal period of mandatory detention began on May 2, 2005. See 8 U.S.C. § 1231(a)(1)(B). This initial period of mandatory detention was tolled during the entire period when Petitioner failed to cooperate with the government efforts to remove him, see 8 U.S.C. § 1231(a)(1)(C), that is, from "May 6, 2005, [the date when] Petitioner was asked to complete documentation necessary for the

government to seek travel documents from Haiti, . . . until August 10, 2005," the date when Petitioner executed such documents, see Ans. at 2 (citing Shaughnessy Dec. ¶9), since the removal period "shall be extended beyond a period of 90 days and the alien may remain in detention during such extended period if the alien fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure or conspires or acts to prevent the alien's removal subject to an order of removal." 8 U.S.C. § 1231(a)(1)(C); see Pelich v. INS, 329 F.3d 1057 (9th Cir. 2003)("Zadvydas does not save an alien who fails to provide requested documentation to effectuate his removal. The reason is self-evident: the detainee cannot convincingly argue that there is no significant likelihood of removal in the reasonably foreseeable future if the detainee controls the clock"); Qing Di Wang v. Carbone, 2005 U.S. Dist. LEXIS 24499 (D.N.J. Oct. 17, 2005) (holding that alien who refused to cooperate can be held in excess of 90-day period); Riley v. Greene, 149 F. Supp. 2d 1256, 1262 (D. Colo. 2001) (same); Sango-Dema v. District Director, 122 F. Supp. 2d 213, 221 (D. Mass. 2000) (same).

   Hence, Petitioner's 90-day period of mandatory detention expired on or about November 6, 2005, see 8 U.S.C. § 1231(a)(1)(C), and--absent any events operating as tolling or intervening circumstances--Petitioner's 6-month "presumptively reasonable" period of detention would have expired on or about

February 4, 2006.  See Zadvydas, 533 U.S. at 700-01.

However, on November 17, 2005, Petitioner was released from the DHS/ICE custody into the custody of the Bergen County Sheriff on narcotics charges and remained in that custody until December 28, 2005.  See Ans. at 8.  These events started Petitioner's 90-day removal period of mandatory detention (and Petitioner's Zadvydas "presumptively reasonable period") *anew* on December 28, 2005.  See 8 U.S.C. § 1231(a)(1)(B)(iii).

> [There cannot] be only one removal period[:] . . . that is the *only* rational reading of the statute. . . . [T]he statute provides that the removal period begins on the latest of several dates.  The passing of one date does not stop the operation of the statute.  In a sense, the only way to apply the statute to a given situation is retrospectively.  That is, the removal period begins when the removal order becomes final.  If a court issues a stay [or a new detention unrelated to removal proceedings takes place], the removal period begins [anew] when the stay is lifted [or when such new detention ends].  Therefore, the only way to determine when the removal period begins, or began, is to look at what events already have occurred.  If there is another potential event, there is another potential beginning date for the removal period.  The only sensible reading of this provision is that [DHS/ICE] is required to effectuate the removal within 90 days of certain events, but will have another 90 days if another one of the designated events occurs at a later date.  The obvious reason for this is that [DHS/ICE]'s authority to effect the removal is suspended due to the occurrence of the later event (such as a stay order [or a new detention on criminal charges]).

Michel v. INS, 119 F. Supp. 2d 485, 498 (M.D. Pa. 2000) (emphasis in original); accord Morena v. Gonzales, 2005 U.S. Dist. LEXIS 37989, at *18 (M.D. Pa. Oct. 4, 2005); Atkinson v. INS, 2002 U.S. Dist. LEXIS 11335, at *5 (E.D. Pa. June 25, 2002); Marcelus v. INS,

2002 U.S. Dist. LEXIS 795, at *6 (E.D. Pa. Jan. 16, 2002); Dunbar v. Holmes, 2000 U.S. Dist. LEXIS 17048, at *6-7 (E.D. Pa. Nov. 28, 2000).

Therefore, Petitioner's 90-day period of mandatory detention had about two months left at the time of Petitioner's filing of his Petition; and Petitioner's Zadvydas "presumptively reasonable period" has not expired as of the date of issuance of this Opinion. While Petitioner asserts that his detention related to removal proceedings has been lengthy and, thus, should end, see Pet. at 4, this claim is without merit since it would be indeed anomalous for this Court to reward Petitioner with a release either for Petitioner's initial lack of cooperation with the government efforts to remove Petitioner or for Petitioner's actions that triggered the charges brought against Petitioner in the Bergen County.[2]

Consequently, this Court finds that Petitioner failed to carry his burden of showing good reason to believe that there is no significant likelihood of his removal in the reasonably foreseeable future. See Zadvydas, 533 U.S. at 701.

This Court, however, notes that Petitioner is free to file another § 2241 petition should, after expiration of his Zadvydas

---

[2] Petitioner also asserts that he was deprived of a custody reviews. However, Petitioner's custody was duly reviewed in April of 2006, within the statutory time table applicable to Petitioner's currently running removal period.

"presumptive period," Petitioner develop good evidence-based reason to believe that his removal is no longer reasonably foreseeable.

## CONCLUSION

Petitioner's application for a writ of habeas corpus under § 2241 is hereby denied.

An appropriate Order accompanies this Opinion.

                                        s/William   J.   Martini
                                        _____
                                          **WILLIAM J. MARTINI**
                                        **United States District Judge**

Dated:    6/19/06